# STATE OF TENNESSEE
# CANNON COUNTY
# 16TH JUDICIAL DISTRICT

☐ First
☐ Alias
☐ Pluries

JIMMY HIGGINS, JAMES THOMAS HIGGINS,

THE JIMMY T. HIGGINS LIVING TRUST, and

THE HIGGINS FAMILY PARTNERSHIP, L.P.

_____ Plaintiff

Vs.

GRANGE MUTUAL CASUALTY COMPANY

671 S. High Street

Columbus, Ohio 43206

_____ Defendant

CIVIL ACTION
DOCKET NO. _95-02_

**Method of Service:**

☐ Cannon Co. Sheriff

☐ Out of County Sheriff

☒ Secretary of State

☐ Certified Mail

☐ Personal Service

☐ Commissioner of Insurance

To the above-named Defendant:

You are summoned to appear and defend a civil action filed against you in the Chancery Court, 1 Public Square, Woodbury, TN 37190, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: _1-6-15_

**BILL BRYSON**
Clerk and Master
Cannon County, Tennessee

By: _Dana Davenport_
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Gayle I. Malone and Jason W. Callen, WALKER, TIPPS & MALONE PLC |
| --- | --- |
| | 2300 One Nashville Place, 150 Fourth Avenue, North |
| | Nashville, Tennessee 37219 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

**BILL BRYSON**
Clerk and Master

Received this summons for service this _____ day of _____, 2015.

**SHERIFF**

To request an ADA accommodation, please contact Diane Hickman at (615) 563-2320.

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 2015, I:

☐ served this summons and complaint / petition on _____

_____ in the following manner:

_____

☐ failed to serve this summons within 90 days after its issuance because _____

_____

_____
Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ , 20_____ I sent, postage prepaid by

registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the compliant in Docket No.

_____ to the defendant, _____ . On the _____ day of

_____ ,20_____ , I received the return receipt for said registered or certified mail, which had been signed

by _____ on the _____ day of _____ , 20_____ . Said return

receipt is attached to this original summons, and both documents are being sent herewith to the Chancery Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS
_____ DAY OF _____ , 20_____ .

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY, OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

_____

_____NOTARY PUBLIC or _____DEPUTY CLERK

MY COMMISSION EXPIRES: _____

## NOTICE

**TO THE DEFENDANT(S):**

Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of homestead exemption depends upon your age and the other factors which are listed in T.C.A. § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list. Mail list to Bill Bryson, Clerk and Master, Cannon County, Tennessee.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF CANNON

(To be completed only if copy certification required.)

I, Bill Bryson, Clerk and Master of the Chancery Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

BILL BRYSON, CLERK and MASTER

By: _Dana Davenport_____ , D.C.

## IN THE CHANCERY COURT OF CANNON COUNTY, TENNESSEE
## AT WOODBURY

JIMMY HIGGINS,　　　　　　　　　　)
JAMES THOMAS HIGGINS,　　　　　)
THE JIMMY T. HIGGINS LIVING　　)
TRUST, and　　　　　　　　　　　　)
THE HIGGINS FAMILY　　　　　　　)
PARTNERSHIP, L.P.,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
THE BURLINGTON INSURANCE　　)
COMPANY, and　　　　　　　　　　)
GRANGE MUTUAL　　　　　　　　　)
CASUALTY COMPANY　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

FILED

JAN 06 2014

WILLIAM G. BRYSON
CLERK & MASTER

Case No. _15-02_____

Declaratory Judgment Action

Judge _____

## COMPLAINT

Plaintiffs Jimmy Higgins, James Thomas ("Tommy") Higgins, The Jimmy T. Higgins Living Trust (the "Trust"), and The Higgins Family Partnership, L.P. (the "Partnership"), state as follows:

### Introduction

1.　　　Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are defendants in the civil action, *Joseph M. Manni, et al. v. Jimmy Higgins, et al.*, Case No. 865, now pending in the Circuit Court of Cannon County, Tennessee at Woodbury (the "Manni Action").

2.　　　The Manni Action asserts a wrongful death claim against Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership related to Beau Manni, who died when a wall of a three-sided silage bin collapsed and fell on him on September 7, 2013, on the Higgins Farm, while he

1

was working that day as a farm employee. The plaintiffs in the Manni Action are Cheryl Bratcher and Joseph Manni, the divorced parents of Beau Manni.

3.  Jimmy Higgins is the general partner of the Partnership, which owns and operates the farm in Cannon County (the "Higgins Farm").

4.  Tommy Higgins is a limited partner of the Partnership.

5.  The Trust is a limited partner of the Partnership, which owns and operates the Higgins Farm.

6.  Grange Mutual Casualty Company ("Grange") issued a farm owner policy, numbered 2740215-03, with effective dates of March 15, 2013 through March 15, 2014 (the "Grange Policy"), that insures the Partnership, Jimmy Higgins (as the General Partner of the Partnership), and Tommy Higgins and the Trust (as limited partners of the Partnership), as relates to the Partnership's ownership and operation of the Higgins Farm during the effective dates of the Grange policy, including at the time of Beau Manni's death on September 7, 2013.[1]

7.  Further, Jimmy Higgins is an owner and operator of a livestock business with the trade name of Higgins Livestock.

8.  Tommy Higgins is also an employee of Higgins Livestock.

9.  The Burlington Insurance Company ("Burlington") issued a commercial general liability policy, numbered 019B028954, with effective dates of June 10, 2013 through June 10, 2014 (the "Burlington Policy"), to Jimmy and Connie Higgins, d/b/a Higgins Livestock that insured Higgins Livestock, Jimmy Higgins, and Tommy Higgins for their ownership, operation

---

[1] Grange has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Grange Policy to the Complaint, but will file it under seal with the Court when necessary.

2

and/or work for Higgins Livestock during the effective dates of the Burlington policy, including at the time of Beau Manni's death on September 7, 2013.[2]

10.     This three-sided silage bin on the Higgins Farm was designed, paid for, built, owned, and maintained by Higgins Livestock and was used by Higgins Livestock to store corn, including cobs and stalks, for use as feed for livestock owned by Higgins Livestock.

11.     This three-sided silage bin had an open front that was approximately 115 feet deep and 105 feet wide, and the bin was constructed of grooved concrete blocks.

12.     The three walls of this silage bin were each approximately eight feet tall and consisted of the grooved concrete blocks that each weighed approximately 3,500 or 3,600 pounds.

13.     The silage bin had no roof.

14.     To pack down the silage within this three-sided silage bin, Higgins Livestock used tractors to drive into the silage bin and on top of and back and forth across the silage.

15.     In or about late July or August 2013, the back wall of the three-sided silage bin had to be repaired after it leaned outward from the pressure of packed silage.

16.     Prior to September 7, 2013, Beau Manni knew that one of the walls of the three-sided silage bin had bowed outward and that he should not approach the silage bin's walls because of the danger of collapse.

17.     Further, Beau Manni had, prior to September 7, 2013, performed temporary work for Higgins Livestock by assisting in the repair of the three-sided silage bin's back wall and by helping pack silage into the bin.

---

[2] Burlington has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Burlington Policy to the Complaint, but will file it under seal with the Court when necessary.

3

18.     Jimmy Higgins gave standing instructions to persons, including Beau Manni, who worked on the Higgins Farm or worked for Higgins Livestock from time to time, not to approach the silage bin's walls because of the danger of a collapse of its wall.

19.     Jimmy Higgins gave this warning to such persons regarding the silage bin in his capacity as general partner of the Partnership, which owned the Higgins Farm.

20.     Jimmy Higgins gave this warning in his capacity as owner and operator of Higgins Livestock.

21.     On September 7, 2013, Beau Manni was working as a farm employee of the Partnership on the Higgins Farm.

22.     The work Beau Manni was to perform on and for the Higgins Farm on that date was spraying weed killer around certain of the Higgins Farm's barns and structures, other than the three-sided silage bin, used for farming.

23.     On September 7, 2013, Jimmy Higgins and Tommy Higgins, acting on behalf of Higgins Livestock, were driving tractors into the silage bin and on top of the silage in order to pack it down within the silage bin.

24.     As Jimmy Higgins and Tommy Higgins were driving tractors within the silage bin to pack down the silage, a large portion of the left wall of the silage bin suddenly collapsed outward.

25.     At the time, Beau Manni knew or should have known that tractors were in use packing down silage in the silage bin.

26.     Unknown to Jimmy Higgins and Tommy Higgins, Beau Manni, for some unknown reason and in disregard of specific instructions to the contrary, approached and was near the left outer wall of the silage bin.

4

27.     At that time, a portion of the left outer wall of the silage bin suddenly collapsed and fell onto Beau Manni, causing his instantaneous death.

28.     The Manni Action was brought on September 11, 2013.

### Grange

29.     Grange is now providing a defense in the Manni Action, subject to a reservation of rights, to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, and the Trust as a limited partner of the Partnership.

30.     Grange's reservation of rights is without merit.

31.     Any denial of coverage by Grange to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, or the Trust as a limited partner of the Partnership would be totally without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Grange Policy.

32.     Plaintiffs therefore seek a declaration that Grange is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

### Burlington

33.     Burlington is now providing a defense in the Manni Action, subject to a reservation of rights, to Jimmy Higgins, d/b/a as Higgins Livestock, and Tommy Higgins in his capacity as an employee of Higgins Livestock.

34.     Burlington's reservation of rights is without merit.

35.     Burlington has recently demanded that Jimmy Higgins submit to an oral examination under oath concerning matters related to the death of Beau Manni, though the

5

Burlington Policy contains no provision that gives or allows Burlington the right to demand or conduct any such oral examination.

36.     Any denial of coverage by Burlington to Jimmy Higgins, d/b/a Higgins Livestock, or Tommy Higgins, as an employee of Higgins Livestock, would be without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Burlington Policy.

37.     Plaintiffs therefore seek a declaration in the present suit that Burlington is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

### Jurisdiction and Venue

38.     Jimmy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee.

39.     Tommy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 784 Short Mountain Road, Woodbury, Tennessee.

40.     The Trust was prepared and established in Tennessee and is intended to provide for the health, welfare, support, maintenance, and education of Jimmy T. Higgins and his family.

41.     The Partnership is a limited partnership organized under Tennessee law with its principal place of business at 6839 McMinnville Highway, Woodbury, Tennessee.

42.     Grange is an Ohio corporation with its principal place of business at 671 S. High Street, Columbus, Ohio 43206.

43.     Burlington is a North Carolina corporation with its principal place of business at 238 International Road, Burlington, North Carolina 27215.

6

44.     This Court has jurisdiction to grant declaratory relief pursuant to Tenn. Code Ann. § 29-14-101, *et seq.*

45.     Venue in this action is proper under Tenn. Code Ann. § 20-4-104.

### Beau Manni

46.     Beau Manni graduated from high school in November 2011.

47.     Thereafter, for a period of time, Mr. Manni worked full time for a Taco Bell restaurant.

48.     In addition, during this period of time, he regularly performed work or jobs on a part-time basis for businesses or farms owned and/or operated by Michael Bratcher (Mr. Manni's step-father) and/or Sammy Bratcher (Mr. Manni's step-grandfather).

49.     Michael Bratcher and/or Cheryl Bratcher (Manni's mother) knew Jimmy Higgins and his family and suggested, recommended, and furnished Beau Manni to Jimmy Higgins, Tommy Higgins, and their family for the purpose of at times performing certain job-specific, temporary, part-time work for certain of the Higgins family businesses to meet seasonal or short-term workload conditions.

50.     In or about July 2013, Beau Manni, who was 19 years old, first began at times performing such certain job-specific, temporary, part-time work to meet seasonal or short-term workload conditions for certain of the Higgins businesses.

51.     His job-specific work included at times part-time work as a farm employee for the Partnership on the Higgins Farm.  The job-specific work performed by Mr. Manni as a farm employee for the Partnership prior to his death included at certain times painting fences on the Higgins Farm and mowing and weed eating around the fences and fields on the Higgins Farm.

7

52.     The temporary, job-specific work performed by Beau Manni at times for Higgins Livestock included assisting in the repair of the three sided-silage bin's back wall and in packing silage into the bin.

53.     While performing this various temporary, job-specific work, Mr. Manni continued working full time for the Taco Bell restaurant and working part-time for Michael Bratcher and/or Sammy Bratcher.

54.     On September 7, 2013, Beau Manni was working on the Higgins Farm as a farm employee for the Partnership with duties principally in connection with the maintenance or use of the Higgins Farm as a farm. Specifically on that day, Mr. Manni was employed to spray weed killer around certain of the Higgins Farm's barns or other buildings, other than the three-sided silage bin, used for farming.

<u>Claims in the Manni Action</u>

55.     A copy of the Third Amended Complaint in the Manni Action is attached as Exhibit A.

56.     The Manni Action alleges that Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are at fault for Beau Manni's death in that they allegedly were negligent in:

    a.      providing an unsafe work environment;

    b.      the design, construction, and maintenance of the silage bin;

    c.      failing to provide feasible precautionary measures;

    d.      that they had actual or constructive knowledge of the dangerous and/or defective condition that existed on the Higgins Farm;

    e.      failing to adequately warn Beau Manni and place visible warning signs at or near the silage bin;

8

f.      failing to restrict access to the area where the silage was being pack;

g.      using large, heavy concrete blocks in allegedly willful disregard for their intended or manufactured use;

h.      operating tractors to pack silage;

i.      failing to put in place any safety policies and procedures for their silage operation; and

j.      not providing any farm safety training to Beau Manni.

57.     The Manni Action further alleges that the Partnership, as owner of the Higgins Farm, was negligent in failing to discharge a duty of reasonable care to ensure that the three-sided silage bin on its property did not constitute a dangerous and/or defective condition.

58.     After the Manni Action was filed, timely notice of the suit was provided to Grange.

59.     After the Manni Action was filed, timely notice of the suit was provided to Burlington.

## Claims Against Grange

60.     The named insured on the Grange Policy is the Partnership.

61.     The Grange Policy further defines insureds to include "members and partners" of the Partnership, including Jimmy Higgins, Tommy Higgins, and the Trust, "with respect to the conduct of [the Partnership's] 'farming' operations."

62.     The Grange Policy provides coverage for claims based on a bodily injury to a farm employee, like Beau Manni, stating specifically that:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies. The "bodily injury" must:

(1)     Be caused by an "occurrence";

9

(2)     Be sustained by a "farm employee";

(3)     Arise out of and in the course of the injured employee's employment by the insured; this employment must involve ownership, maintenance or use of portions of the "insured location" that are owned or operated for "farming" purposes. As used here, the terms ownership, maintenance and use include operations necessary or incidental to ownership, maintenance and use.

63.     The Grange Policy defines "farm employees," to be individuals, like Beau Manni, who are an "employee whose duties are principally in connection with the maintenance or use of the 'insured location' as a farm" and that "[t]hese duties include the maintenance or use of the 'insured's' farm equipment."

64.     After receiving notice that the Manni Action had been amended on August 28, 2014, to add as defendants the Partnership, as owner of the Higgins Farm, and Jimmy Higgins in his capacity as General Partner of the Partnership, and Tommy Higgins and the Trust, as limited partners of the Partnership, Grange agreed to provide them each a coverage defense subject to a reservation of rights set forth in an October 7, 2014 letter.

65.     Grange's October 7th letter sets forth a variety of purported grounds under which coverage under the Grange Policy for the Manni Lawsuit might be excluded, including the allegation that Beau Manni "may" have been acting as a non-farm "employee" of the Partnership on September 7, 2013, and as such that claims related to his death would fall within the Grange Policy's exclusion for injuries to certain Partnership employees.

66.     None of the purported grounds for exclusion identified by Grange has any merit whatsoever, including, but not limited to, its claim that Beau Manni "may" have been acting as a non-farm employee of the Partnership on the date of his death. At all times material, Mr. Manni was acting as a farm employee of the Partnership on the Higgins Farm and therefore any claims

10

related to his death against the Partnership as the owner of Higgins Farm, Jimmy Higgins as the General Partner of the Partnership, and Tommy Higgins and/or the Trust as limited partners of the Partnership, fall squarely within the scope of coverage extended under the Grange Policy for claims arising from bodily injury to Partnership farm employees.

### Claims Against Burlington

67.    Jimmy Higgins, d/b/a Higgins Livestock, is an insured under the Burlington Policy.

68.    The Burlington Policy defines insureds to include "employees" of Higgins Livestock, such as Tommy Higgins, "for acts within the scope of their employment by [Higgins Livestock] or while such employees are performing duties related to the conduct of [Higgins Livestock's] business."

69.    On September 7, 2013, at the time of Beau Manni's death, Tommy Higgins was acting within the scope and course of his employment with Higgins Livestock.

70.    The Burlington Policy provides coverage for claims based on a bodily injury, stating "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

71.    After receiving timely notice of the Manni Action, Burlington agreed to provide a defense subject to a reservation of rights set forth in a December 20, 2013 letter and an August 15, 2014 letter.

72.    Burlington's December 20th and August 15th letters set forth a variety of grounds for the exclusion of coverage under the Burlington Policy for the Manni Action.

73.    The principal purported ground for exclusion is Burlington's supposition that Beau Manni "may have been" an employee of Higgins Livestock, rather than a farm employee of

11

the Partnership, on September 7, 2013, and therefore claims related to his death could potentially fall within the Burlington Policy's exclusion for coverage for bodily injuries to non-temporary Higgins Livestock employees.

74. Contrary to Burlington's supposition, it is clear and beyond dispute that at the time of Beau Manni's death on September 7, 2013, Manni was acting as a farm employee of the Partnership at the Higgins Farm.

75. As a result, none of the purported grounds for Burlington's potential exclusion of coverage to Jimmy Higgins, d/b/a Higgins Livestock, or to Tommy Higgins, as an employee of Higgins Livestock, as set out in either its December 20th or August 15th letters has any basis whatsoever in law or in fact.

76. Yet, Burlington continues to investigate these purported grounds for exclusion and in an October 7, 2014 letter, Burlington demands that Jimmy Higgins submit to an oral examination under oath, even though the Burlington Policy does not give Burlington any right to demand any such an oral examination.

## Count One: Declaration Against Grange

77. Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership incorporate by reference the above paragraphs.

78. Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Grange Policy.

79. The Manni Action alleges that the Partnership, as owner of the Higgins Farm, and Jimmy Higgins, as general partner of the Partnership, and Tommy Higgins and the Trust, as limited partners of the Partnership, are at fault for the death of the Beau Manni.

12

80.	On September 7, 2013, Beau Manni was serving as a farm employee, as defined under the Grange Policy, of the Partnership, in spraying for weeds on the Higgins Farm in connection with the maintenance and use of the Higgins Farm as a farm.

81.	Beau Manni's death on September 7, 2013, was caused by an "occurrence," as defined under the Grange Policy, and arose out of and in the course of his employment as a farm employee by the Partnership.

82.	The Partnership, Jimmy Higgins, Tommy Higgins and the Trust are insureds under the Grange Policy and are entitled to both a full defense and coverage under the Grange Policy for claims made against them in the Manni Action relating to the ownership and/or operation of the Higgins Farm.

83.	The Partnership, Jimmy Higgins, Tommy Higgins and the Trust seek a declaration that Grange is obligated under the Grange Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

### Count Two: Declaration Against Burlington

84.	Jimmy Higgins and Tommy Higgins incorporate by reference the above paragraphs.

85.	Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Burlington Policy.

86.	The Manni Action alleges that Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins, as an employee of Higgins Livestock, are at fault for the death of Beau Manni.

13

87. Jimmy Higgins, d/b/a Higgins Livestock, was acting on behalf of Higgins Livestock in packing silage in the three-sided silage bin on September 7, 2013.

88. Tommy Higgins was acting as an employee of Higgins Livestock in packing silage and acting within the scope of that employment and/or performing duties related to the conduct of Higgins Livestock's business.

89. The silage bin that collapsed onto Beau Manni was designed, paid for, built, owned and maintained by Jimmy Higgins, d/b/a Higgins Livestock.

90. Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins are insureds under the Burlington Policy and are entitled to both a full defense and coverage under the Burlington Policy for claims made against them in the Manni Action relating to their ownership, operation, and/or work for Higgins Livestock.

91. Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins seek a declaration that Burlington is obligated under the Burlington Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(1) Declare that Burlington and Grange are obligated to provide coverage under their respective policies for the costs arising from the Manni Action.

(2) Award Plaintiffs all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees.

(3) Grant Plaintiffs such other and further relief as the Court deems just and equitable.

14

Respectfully submitted,

Gayle I. Malone (#2388)
Jason W. Callen (#26225)
WALKER, TIPPS & MALONE, PLC
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
615-313-6000

*Counsel for Plaintiff*

107254

IN THE CIRCUIT COURT OF CANNON COUNTY, TENNESSEE
AT WOODBURY

JOSEPH M. MANNI, AS FATHER )
AND   NEXT OF KIN AND )
CHERYL L. BRATCHER AS )
MOTHER AND NEXT OF KIN OF )
BEAU MANNI, DECEASED, )
)
     Plaintiff, )
)
vs. )
)
JIMMY HIGGINS d/b/a )
HIGGINS LIVESTOCK; )
JAMES THOMAS "TOMMY" )
HIGGINS; )
THE HIGGINS FAMILY )
PARTNERSHIP, L.P.; )
JIMMY HIGGINS in the capacity of )
General Partner of THE HIGGINS )
FAMILY PARTNERSHIP, L.P.; and )
THE JIMMY T. HIGGINS LIVING )
TRUST )
)
     Defendants. )

**FILED**

AUG 2 8 2014

LYNNE D. FOSTER
CLERK OF THE COURT
BY _____ D.C.

NO. 865
JURY DEMAND

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Comes now Cheryl L. Bratcher, as mother and next of kin of the late Beau Manni, and

Joseph M. Manni, as father and next of kin of the late Beau Manni, deceased, by and through

counsel, and would show the following unto this Honorable Court as follows through their Third

Amended Complaint against the Defendants:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    . Plaintiff, Joseph Manni, as father and next of kin of Beau Manni, deceased, is a

citizen and resident of Poplar Grove, Illinois.

2.    Plaintiff, Cheryl L. Bratcher, as mother and next of kin of Beau Manni, deceased,

is a citizen and resident of Warren County, Tennessee.

3.     Defendant, Jimmy Higgins, is a citizen and resident of Cannon County,
Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee. Defendant
Jimmy Higgins has been properly served with process in this matter.

4.     Defendant, Jimmy Higgins, owns and operates the business known as Higgins
Livestock, which is engaged in raising livestock and other agricultural commodities.

5.     Defendant, James Thomas "Tommy" Higgins, is a citizen and resident of Cannon
County, Tennessee, with an address of 784 Short Mountain Road, Woodbury, Tennessee.
Defendant Jimmy Higgins has been served with process through his counsel of record.
Defendant, James Thomas "Tommy" Higgins engages in work for the benefits of the Defendant
Jimmy Higgins and Higgins Livestock and The Higgins Family Partnership, L.P. and The
Higgins Family Partnership, L.P.

6.     Defendant, The Higgins Family Partnership, L.P., is a Tennessee limited
partnership authorized to conduct business in the State of Tennessee. Said Defendant can be
served with process through its registered agent for service of process, Jimmy Higgins and can
be served with process at 6839 McMinnville Highway, Woodbury, Tennessee. Plaintiffs further
sue Jimmy Higgins in his role as general partner of The Higgins Family Partnership, L.P.
pursuant to T.C.A. §61-2-302 and otherwise pursuant to Tennessee law.

7.     Defendant The Jimmy T. Higgins Living Trust owns 98% of the interests in The
Higgins Family Partnership, L.P. Said Defendant can be served with process through Jimmy
Higgins and can be served with process at 6839 McMinnville Highway, Woodbury, Tennessee.

8.     Beau Manni was an independent contractor hired by Defendant Jimmy Higgins
and/or Higgins Livestock to perform certain agriculture related jobs and was the victim of an
accident that occurred within the bounds and confines of Cannon County, Tennessee.

9.      Defendant Jimmy Higgins maintains a silage bin/storage area for harvested corn fodder.

10.     Defendant, The Higgins Family Partnership, L.P., owns the property in which the dangerous and defective condition existed. Further, Defendant The Jimmy T. Higgins Living Trust is the majority owner of the Defendant The Higgins Family Partnership, L.P.

## II.    FACTS OF THE CASE

11.     The silage bin consisted of three large walls in a u-shape form.

12.     Defendant James Thomas "Tommy" Higgins and the Defendant Jimmy Higgins designed and built the subject silage bin.

13.     Each wall consisted of several large and heavy concrete blocks or barriers stacked on top of each other.

14.     Each concrete block weighed approximately three thousand six hundred (3,600) pounds.

15.     Silage was placed inside the bin with farm equipment. A John Deere tractor 7220 was being operated by the Defendant James Thomas "Tommy" Higgins and a John Deere tractor 7520 was being operated at the time of the subject accident and both pushed the silage against the walls of the silage bin.

16.     The stacked, concrete blocks weighing approximately three thousand six hundred (3,600) pounds each were not secured or restrained by any device or safety apparatus. Further, the stacked, concrete blocks were set on a gravel base and not a reinforced concrete footing as would be expected in a structurally sound configuration.

17.     On September 7, 2013, Bean Manni was spraying weeds for the Defendants on their farm at 6839 McMinnville Highway, Woodbury, Tennessee.

18.    Beau Manni was at the base of the silage bin wall spraying weeds when it collapsed on him after the tractors that were being operated by the Defendants pushed silage against the walls, and the weight of the tractors combined with the force of the silage being packed against the walls caused the free standing concrete blocks to fall.

19.    The Defendants were moving their tractors at or near the walls of the silage bin at the time of the subject accident.

20.    Upon removing the concrete blocks with a tractor, Beau Manni was found deceased by way of a blunt impact to the right side of his head and had also sustained other injuries.

## III.    CAUSES OF ACTION

21.    The Plaintiffs sue the Defendants for negligence in providing an unsafe work environment to independent contractor Beau Manni.

22.    The Plaintiffs sue the Defendants for the negligent design, construction, and maintenance of the silage bin for the following reasons:

a.    The Defendants were negligent in stacking three thousand six hundred pound (3,600) concrete blocks on top of one another without any safety measure or restraints to secure them and without regard to the safety of Beau Manni and others.

b.    The Defendants were negligent in setting the concrete blocks on a gravel base, not a reinforced concrete footing as would be expected in a structurally sound configuration, and the gravel base for the concrete block sides was inadequate to prevent the overturn of the block wall.

c.    The Defendants were negligent in not constructing the silage bin where the stability of the walls could have been assured by earth berms around the outside and posts set around the silage bin to stabilize and secure the walls made of the concrete blocks.  Alternatively, the Defendants were negligent in not constructing a "drive over" silage bin where the walls would not have collapsed when the silage was being packed by tractors.

d.    The Defendants were negligent in attempting to construct a silage bin with no expertise or training or education in how to safely construct or design the silage bin and sought no advice from any expert on how it was to be designed or constructed or maintained.

e.    The Defendants were negligent in not securing the concrete blocks into each other to where they were not free standing, which would have assisted in the prevention of the collapse of the wall.

f.    The Defendants were negligent in not doubling the concrete blocks on the walls to where the concrete block walls were "two deep," which would have provided additional stability to the walls.

23.    The Defendants could have engaged in the feasible, precautionary measures listed in paragraph 22 yet failed to do so before the subject accident occurred.

24.    It was reasonably foreseeable to the Defendants that the stability of the walls of the silage bin was compromised because the back wall was previously bowing out at the top. The Defendants were negligent in using the silage bin with the actual knowledge or constructive knowledge of the dangerous and/or defective condition that existed on the property.

25.    The Defendants were negligent in failing to adequately warn Beau Manni of the dangers associated with the silage bin and failed to place visible warning signs at or near the silage bin warning independent contractors, such as Beau Manni, of the danger to be near the silage bin. These precautionary measures could have been implemented before the subject accident.

26.    The Defendants were negligent in failing to restrict access to the area where the silage was being packed and should have fenced off the silage bin to where if the block wall fell, the blocks would not reach anyone walking near the silage bin. These precautionary measures could have been implemented before the subject accident.

27.    The Defendants were negligent for the use of large, heavy concrete blocks in willful disregard for their intended or manufactured use.

28.    The Defendants were negligent in the operation of their tractors over the silage where the tractors not only packed the silage downward but also placed a side thrust on the wall from the silage being squeezed between the loading and the wall of the silage bin.

29.    The Defendants were negligent in failing to put in place any safety policies and procedures for their silage operation, which contributed to the accident that caused the death of Beau Manni.

30.    The Defendants were negligent in not providing any farm safety training to Beau Manni.

31.    The silage bin could have been constructed by the Defendants in such a way wherein the accident would not have occurred, and the Defendants were negligent in not constructing the silage bin in a way to have prevented the subject accident.

32.    The Defendants were negligent in operating two tractors at one time in packing the silage rather than operating one tractor at a time and having the extra person around the silage bin to ensure that no one walked around the silage bin while packing occurred.

33.    The Defendants The Jimmy T. Higgins Living Trust and The Higgins Family Partnership, L.P. were negligent in that they were vested with the duty of reasonable care as owners of the subject property to ensure that the property did not contain dangerous and/or defective conditions on the premises and failed to discharge this duty and breached this duty of care owed to Beau Manni.

34.    Plaintiffs further allege that Defendants' actions were reckless, and they are therefore entitled to recover punitive damages against the Defendants.

35.    Defendants are liable under the doctrine of respondeat superior for the actions of any employee or agent of Defendants whose negligent and reckless actions caused or contributed to the death of Beau Manni.

36.    All of these causes of action are factually based and are the proximate causes of the injuries sustained by and death of Beau Manni.

## IV.  DAMAGES

37.    The Plaintiffs are entitled to recover for their son's physical and mental pain and suffering prior to his death; his loss of income and loss of capacity to earn income in the future; his funeral expenses; incidental damages; including the pecuniary value of Beau Manni's life; which includes, but is not limited to, his loss of enjoyment of life; the loss of consortium with his father and mother; compensatory damages; punitive damages; and all other damages allowed by law.

PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

a.  That proper process be issued and served upon the Defendant The Higgins Family Partnership, L.P., Jimmy Higgins as general partner of The Higgins Family Partnership, L.P., and Defendant The Jimmy T. Higgins Living Trust that they be required to appear and answer this Third Amended Complaint within the time required by law;

b.  That Jimmy Higgins answer this Third Amended Complaint within the time required by law;

c.  That Plaintiffs, as father and mother and next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for compensatory damages;

d.  That Plaintiffs, as father and mother next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for punitive damages;

e.  That a jury of twelve (12) persons try this cause;

f.  That the costs of this action and any discretionary costs be awarded to the Plaintiffs; and

g.  For such further and other general relief to which Plaintiffs may be entitled.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on the following counsel of record in the manner of service indicated below:

_____ By placing this document in a postage prepaid envelope in the United States Mail Service addressed to:

> Raymond G. Prince, Esq.
> Prince & Hellinger, PC
> 150 Second Ave. N., Suite 300
> Nashville, Tennessee 37201

✓ By sending this document via facsimile to:

> Raymond G. Prince, Esq.
> VIA FACSIMILE AT (615) 244-8644

This the 28th day of August , 2014.

_Brent Keeton by permission MTG_
C. Brent Keeton, Esq. (BPR #022147)

Michael D. Galligan, Esq. 3181
M. Trevor Galligan, Esq. 27243

Respectfully submitted this the 28th day of August, 2014.


_Brent Keeton_ by permission MTG

C. Brent Keeton, Esq. (BPR #022147)
Keeton & Perry, PLLC
Attorneys and Counselors At Law
401 Murfreesboro Highway
Manchester, Tennessee 37355
(931) 723-7145 (phone)
(931) 723-7147 (fax)
brent@keetonperry.com (email)
*Attorney for Cheryl L. Bratcher*


Michael D. Galligan, Esq. (BPR #003181)
M. Trevor Galligan, Esq. (BPR #027243)
Galligan & Newman
309 West Main Street
McMinnville, Tennessee 37110
*Attorney for Joseph Manni*

# IN THE CHANCERY COURT OF CANNON COUNTY, TENNESSEE
## AT WOODBURY

JIMMY HIGGINS,  )
JAMES THOMAS HIGGINS,  )
THE JIMMY T. HIGGINS LIVING  )
TRUST, and  )
THE HIGGINS FAMILY  )
PARTNERSHIP, L.P.  )
  )
    Plaintiffs,  )
  )
  )
vs.  )
  )
THE BURLINGTON INSURANCE  )
COMPANY, and  )
GRANGE MUTUAL  )
CASUALTY COMPANY  )
  )
    Defendants.  )

*Filed*
JAN 06 2014
WILLIAM H. BRYSON
CLERK & MASTER

Case No. ___15-02___

Declaratory Judgment Action

Judge _____

## COMPLAINT

Plaintiffs Jimmy Higgins, James Thomas ("Tommy") Higgins, The Jimmy T. Higgins Living Trust (the "Trust"), and The Higgins Family Partnership, L.P. (the "Partnership"), state as follows:

### Introduction

1. Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are defendants in the civil action, *Joseph M. Manni, et al. v. Jimmy Higgins, et al.*, Case No. 865, now pending in the Circuit Court of Cannon County, Tennessee at Woodbury (the "Manni Action").

2. The Manni Action asserts a wrongful death claim against Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership related to Beau Manni, who died when a wall of a three-sided silage bin collapsed and fell on him on September 7, 2013, on the Higgins Farm, while he

1

Case 3:15-cv-00128   Document 1-1   Filed 02/11/15   Page 28 of 80 PageID #: 32

was working that day as a farm employee. The plaintiffs in the Manni Action are Cheryl Bratcher and Joseph Manni, the divorced parents of Beau Manni.

3.     Jimmy Higgins is the general partner of the Partnership, which owns and operates the farm in Cannon County (the "Higgins Farm").

4.     Tommy Higgins is a limited partner of the Partnership.

5.     The Trust is a limited partner of the Partnership, which owns and operates the Higgins Farm.

6.     Grange Mutual Casualty Company ("Grange") issued a farm owner policy, numbered 2740215-03, with effective dates of March 15, 2013 through March 15, 2014 (the "Grange Policy"), that insures the Partnership, Jimmy Higgins (as the General Partner of the Partnership), and Tommy Higgins and the Trust (as limited partners of the Partnership), as relates to the Partnership's ownership and operation of the Higgins Farm during the effective dates of the Grange policy, including at the time of Beau Manni's death on September 7, 2013.[1]

7.     Further, Jimmy Higgins is an owner and operator of a livestock business with the trade name of Higgins Livestock.

8.     Tommy Higgins is also an employee of Higgins Livestock.

9.     The Burlington Insurance Company ("Burlington") issued a commercial general liability policy, numbered 019B028954, with effective dates of June 10, 2013 through June 10, 2014 (the "Burlington Policy"), to Jimmy and Connie Higgins, d/b/a Higgins Livestock that insured Higgins Livestock, Jimmy Higgins, and Tommy Higgins for their ownership, operation

---

[1] Grange has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Grange Policy to the Complaint, but will file it under seal with the Court when necessary.

2

and/or work for Higgins Livestock during the effective dates of the Burlington policy, including at the time of Beau Manni's death on September 7, 2013.[2]

10.　　This three-sided silage bin on the Higgins Farm was designed, paid for, built, owned, and maintained by Higgins Livestock and was used by Higgins Livestock to store corn, including cobs and stalks, for use as feed for livestock owned by Higgins Livestock.

11.　　This three-sided silage bin had an open front that was approximately 115 feet deep and 105 feet wide, and the bin was constructed of grooved concrete blocks.

12.　　The three walls of this silage bin were each approximately eight feet tall and consisted of the grooved concrete blocks that each weighed approximately 3,500 or 3,600 pounds.

13.　　The silage bin had no roof.

14.　　To pack down the silage within this three-sided silage bin, Higgins Livestock used tractors to drive into the silage bin and on top of and back and forth across the silage.

15.　　In or about late July or August 2013, the back wall of the three-sided silage bin had to be repaired after it leaned outward from the pressure of packed silage.

16.　　Prior to September 7, 2013, Beau Manni knew that one of the walls of the three-sided silage bin had bowed outward and that he should not approach the silage bin's walls because of the danger of collapse.

17.　　Further, Beau Manni had, prior to September 7, 2013, performed temporary work for Higgins Livestock by assisting in the repair of the three-sided silage bin's back wall and by helping pack silage into the bin.

---

[2] Burlington has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Burlington Policy to the Complaint, but will file it under seal with the Court when necessary.

3

18.     Jimmy Higgins gave standing instructions to persons, including Beau Manni, who worked on the Higgins Farm or worked for Higgins Livestock from time to time, not to approach the silage bin's walls because of the danger of a collapse of its wall.

19.     Jimmy Higgins gave this warning to such persons regarding the silage bin in his capacity as general partner of the Partnership, which owned the Higgins Farm.

20.     Jimmy Higgins gave this warning in his capacity as owner and operator of Higgins Livestock.

21.     On September 7, 2013, Beau Manni was working as a farm employee of the Partnership on the Higgins Farm.

22.     The work Beau Manni was to perform on and for the Higgins Farm on that date was spraying weed killer around certain of the Higgins Farm's barns and structures, other than the three-sided silage bin, used for farming.

23.     On September 7, 2013, Jimmy Higgins and Tommy Higgins, acting on behalf of Higgins Livestock, were driving tractors into the silage bin and on top of the silage in order to pack it down within the silage bin.

24.     As Jimmy Higgins and Tommy Higgins were driving tractors within the silage bin to pack down the silage, a large portion of the left wall of the silage bin suddenly collapsed outward.

25.     At the time, Beau Manni knew or should have known that tractors were in use packing down silage in the silage bin.

26.     Unknown to Jimmy Higgins and Tommy Higgins, Beau Manni, for some unknown reason and in disregard of specific instructions to the contrary, approached and was near the left outer wall of the silage bin.

4

27.     At that time, a portion of the left outer wall of the silage bin suddenly collapsed and fell onto Beau Manni, causing his instantaneous death.

28.     The Manni Action was brought on September 11, 2013.

## Grange

29.     Grange is now providing a defense in the Manni Action, subject to a reservation of rights, to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, and the Trust as a limited partner of the Partnership.

30.     Grange's reservation of rights is without merit.

31.     Any denial of coverage by Grange to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, or the Trust as a limited partner of the Partnership would be totally without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Grange Policy.

32.     Plaintiffs therefore seek a declaration that Grange is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

## Burlington

33.     Burlington is now providing a defense in the Manni Action, subject to a reservation of rights, to Jimmy Higgins, d/b/a as Higgins Livestock, and Tommy Higgins in his capacity as an employee of Higgins Livestock.

34.     Burlington's reservation of rights is without merit.

35.     Burlington has recently demanded that Jimmy Higgins submit to an oral examination under oath concerning matters related to the death of Beau Manni, though the

5

Burlington Policy contains no provision that gives or allows Burlington the right to demand or conduct any such oral examination.

36.     Any denial of coverage by Burlington to Jimmy Higgins, d/b/a Higgins Livestock, or Tommy Higgins, as an employee of Higgins Livestock, would be without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Burlington Policy.

37.     Plaintiffs therefore seek a declaration in the present suit that Burlington is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

## Jurisdiction and Venue

38.     Jimmy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee.

39.     Tommy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 784 Short Mountain Road, Woodbury, Tennessee.

40.     The Trust was prepared and established in Tennessee and is intended to provide for the health, welfare, support, maintenance, and education of Jimmy T. Higgins and his family.

41.     The Partnership is a limited partnership organized under Tennessee law with its principal place of business at 6839 McMinnville Highway, Woodbury, Tennessee.

42.     Grange is an Ohio corporation with its principal place of business at 671 S. High Street, Columbus, Ohio 43206.

43.     Burlington is a North Carolina corporation with its principal place of business at 238 International Road, Burlington, North Carolina 27215.

6

44.     This Court has jurisdiction to grant declaratory relief pursuant to Tenn. Code Ann. § 29-14-101, *et seq.*

45.     Venue in this action is proper under Tenn. Code Ann. § 20-4-104.

### Beau Manni

46.     Beau Manni graduated from high school in November 2011.

47.     Thereafter, for a period of time, Mr. Manni worked full time for a Taco Bell restaurant.

48.     In addition, during this period of time, he regularly performed work or jobs on a part-time basis for businesses or farms owned and/or operated by Michael Bratcher (Mr. Manni's step-father) and/or Sammy Bratcher (Mr. Manni's step-grandfather).

49.     Michael Bratcher and/or Cheryl Bratcher (Manni's mother) knew Jimmy Higgins and his family and suggested, recommended, and furnished Beau Manni to Jimmy Higgins, Tommy Higgins, and their family for the purpose of at times performing certain job-specific, temporary, part-time work for certain of the Higgins family businesses to meet seasonal or short-term workload conditions.

50.     In or about July 2013, Beau Manni, who was 19 years old, first began at times performing such certain job-specific, temporary, part-time work to meet seasonal or short-term workload conditions for certain of the Higgins businesses.

51.     His job-specific work included at times part-time work as a farm employee for the Partnership on the Higgins Farm. The job-specific work performed by Mr. Manni as a farm employee for the Partnership prior to his death included at certain times painting fences on the Higgins Farm and mowing and weed eating around the fences and fields on the Higgins Farm.

7

52.     The temporary, job-specific work performed by Beau Manni at times for Higgins Livestock included assisting in the repair of the three sided-silage bin's back wall and in packing silage into the bin.

53.     While performing this various temporary, job-specific work, Mr. Manni continued working full time for the Taco Bell restaurant and working part-time for Michael Bratcher and/or Sammy Bratcher.

54.     On September 7, 2013, Beau Manni was working on the Higgins Farm as a farm employee for the Partnership with duties principally in connection with the maintenance or use of the Higgins Farm as a farm. Specifically on that day, Mr. Manni was employed to spray weed killer around certain of the Higgins Farm's barns or other buildings, other than the three-sided silage bin, used for farming.

## Claims in the Manni Action

55.     A copy of the Third Amended Complaint in the Manni Action is attached as Exhibit A.

56.     The Manni Action alleges that Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are at fault for Beau Manni's death in that they allegedly were negligent in:

     a.     providing an unsafe work environment;

     b.     the design, construction, and maintenance of the silage bin;

     c.     failing to provide feasible precautionary measures;

     d.     that they had actual or constructive knowledge of the dangerous and/or defective condition that existed on the Higgins Farm;

     e.     failing to adequately warn Beau Manni and place visible warning signs at or near the silage bin;

8

f.    failing to restrict access to the area where the silage was being pack;

g.    using large, heavy concrete blocks in allegedly willful disregard for their intended or manufactured use;

h.    operating tractors to pack silage;

i.    failing to put in place any safety policies and procedures for their silage operation; and

j.    not providing any farm safety training to Beau Manni.

57.    The Manni Action further alleges that the Partnership, as owner of the Higgins Farm, was negligent in failing to discharge a duty of reasonable care to ensure that the three-sided silage bin on its property did not constitute a dangerous and/or defective condition.

58.    After the Manni Action was filed, timely notice of the suit was provided to Grange.

59.    After the Manni Action was filed, timely notice of the suit was provided to Burlington.

### Claims Against Grange

60.    The named insured on the Grange Policy is the Partnership.

61.    The Grange Policy further defines insureds to include "members and partners" of the Partnership, including Jimmy Higgins, Tommy Higgins, and the Trust, "with respect to the conduct of [the Partnership's] 'farming' operations."

62.    The Grange Policy provides coverage for claims based on a bodily injury to a farm employee, like Beau Manni, stating specifically that:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies. The "bodily injury" must:

(1)    Be caused by an "occurrence";

9

(2)    Be sustained by a "farm employee";

(3)    Arise out of and in the course of the injured employee's employment by the insured; this employment must involve ownership, maintenance or use of portions of the "insured location" that are owned or operated for "farming" purposes. As used here, the terms ownership, maintenance and use include operations necessary or incidental to ownership, maintenance and use.

63.    The Grange Policy defines "farm employees," to be individuals, like Beau Manni, who are an "employee whose duties are principally in connection with the maintenance or use of the 'insured location' as a farm" and that "[t]hese duties include the maintenance or use of the 'insured's' farm equipment."

64.    After receiving notice that the Manni Action had been amended on August 28, 2014, to add as defendants the Partnership, as owner of the Higgins Farm, and Jimmy Higgins in his capacity as General Partner of the Partnership, and Tommy Higgins and the Trust, as limited partners of the Partnership, Grange agreed to provide them each a coverage defense subject to a reservation of rights set forth in an October 7, 2014 letter.

65.    Grange's October 7th letter sets forth a variety of purported grounds under which coverage under the Grange Policy for the Manni Lawsuit might be excluded, including the allegation that Beau Manni "may" have been acting as a non-farm "employee" of the Partnership on September 7, 2013, and as such that claims related to his death would fall within the Grange Policy's exclusion for injuries to certain Partnership employees.

66.    None of the purported grounds for exclusion identified by Grange has any merit whatsoever, including, but not limited to, its claim that Beau Manni "may" have been acting as a non-farm employee of the Partnership on the date of his death. At all times material, Mr. Manni was acting as a farm employee of the Partnership on the Higgins Farm and therefore any claims

10

related to his death against the Partnership as the owner of Higgins Farm, Jimmy Higgins as the General Partner of the Partnership, and Tommy Higgins and/or the Trust as limited partners of the Partnership, fall squarely within the scope of coverage extended under the Grange Policy for claims arising from bodily injury to Partnership farm employees.

### Claims Against Burlington

67.     Jimmy Higgins, d/b/a Higgins Livestock, is an insured under the Burlington Policy.

68.     The Burlington Policy defines insureds to include "employees" of Higgins Livestock, such as Tommy Higgins, "for acts within the scope of their employment by [Higgins Livestock] or while such employees are performing duties related to the conduct of [Higgins Livestock's] business."

69.     On September 7, 2013, at the time of Beau Manni's death, Tommy Higgins was acting within the scope and course of his employment with Higgins Livestock.

70.     The Burlington Policy provides coverage for claims based on a bodily injury, stating "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

71.     After receiving timely notice of the Manni Action, Burlington agreed to provide a defense subject to a reservation of rights set forth in a December 20, 2013 letter and an August 15, 2014 letter.

72.     Burlington's December 20th and August 15th letters set forth a variety of grounds for the exclusion of coverage under the Burlington Policy for the Manni Action.

73.     The principal purported ground for exclusion is Burlington's supposition that Beau Manni "may have been" an employee of Higgins Livestock, rather than a farm employee of

11

the Partnership, on September 7, 2013, and therefore claims related to his death could potentially fall within the Burlington Policy's exclusion for coverage for bodily injuries to non-temporary Higgins Livestock employees.

74.     Contrary to Burlington's supposition, it is clear and beyond dispute that at the time of Beau Manni's death on September 7, 2013, Manni was acting as a farm employee of the Partnership at the Higgins Farm.

75.     As a result, none of the purported grounds for Burlington's potential exclusion of coverage to Jimmy Higgins, d/b/a Higgins Livestock, or to Tommy Higgins, as an employee of Higgins Livestock, as set out in either its December 20th or August 15th letters has any basis whatsoever in law or in fact.

76.     Yet, Burlington continues to investigate these purported grounds for exclusion and in an October 7, 2014 letter, Burlington demands that Jimmy Higgins submit to an oral examination under oath, even though the Burlington Policy does not give Burlington any right to demand any such an oral examination.

### Count One: Declaration Against Grange

77.     Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership incorporate by reference the above paragraphs.

78.     Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Grange Policy.

79.     The Manni Action alleges that the Partnership, as owner of the Higgins Farm, and Jimmy Higgins, as general partner of the Partnership, and Tommy Higgins and the Trust, as limited partners of the Partnership, are at fault for the death of the Beau Manni.

12

80. On September 7, 2013, Beau Manni was serving as a farm employee, as defined under the Grange Policy, of the Partnership, in spraying for weeds on the Higgins Farm in connection with the maintenance and use of the Higgins Farm as a farm.

81. Beau Manni's death on September 7, 2013, was caused by an "occurrence," as defined under the Grange Policy, and arose out of and in the course of his employment as a farm employee by the Partnership.

82. The Partnership, Jimmy Higgins, Tommy Higgins and the Trust are insureds under the Grange Policy and are entitled to both a full defense and coverage under the Grange Policy for claims made against them in the Manni Action relating to the ownership and/or operation of the Higgins Farm.

83. The Partnership, Jimmy Higgins, Tommy Higgins and the Trust seek a declaration that Grange is obligated under the Grange Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

## Count Two: Declaration Against Burlington

84. Jimmy Higgins and Tommy Higgins incorporate by reference the above paragraphs.

85. Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Burlington Policy.

86. The Manni Action alleges that Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins, as an employee of Higgins Livestock, are at fault for the death of Beau Manni.

13

87.    Jimmy Higgins, d/b/a Higgins Livestock, was acting on behalf of Higgins Livestock in packing silage in the three-sided silage bin on September 7, 2013.

88.    Tommy Higgins was acting as an employee of Higgins Livestock in packing silage and acting within the scope of that employment and/or performing duties related to the conduct of Higgins Livestock's business.

89.    The silage bin that collapsed onto Beau Manni was designed, paid for, built, owned and maintained by Jimmy Higgins, d/b/a Higgins Livestock.

90.    Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins are insureds under the Burlington Policy and are entitled to both a full defense and coverage under the Burlington Policy for claims made against them in the Manni Action relating to their ownership, operation, and/or work for Higgins Livestock.

91.    Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins seek a declaration that Burlington is obligated under the Burlington Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(1)    Declare that Burlington and Grange are obligated to provide coverage under their respective policies for the costs arising from the Manni Action.

(2)    Award Plaintiffs all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees.

(3)    Grant Plaintiffs such other and further relief as the Court deems just and equitable.

14

Respectfully submitted,

Gayle I. Malone (#2388)
Jason W. Callen (#26225)
WALKER, TIPPS & MALONE, PLC
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
615-313-6000

*Counsel for Plaintiff*

107254

IN THE CIRCUIT COURT OF CANNON COUNTY, TENNESSEE
AT WOODBURY

JOSEPH M. MANNI, AS FATHER )
AND NEXT OF KIN AND )
CHERYL L. BRATCHER AS )
MOTHER AND NEXT OF KIN OF )
BEAU MANNI, DECEASED, )
)
    Plaintiff, )
)
vs. )
)   NO. 865
)   JURY DEMAND
JIMMY HIGGINS d/b/a )
HIGGINS LIVESTOCK; )
JAMES THOMAS "TOMMY" )
HIGGINS; )
THE HIGGINS FAMILY )
PARTNERSHIP, L.P.; )
JIMMY HIGGINS in the capacity of )
General Partner of THE HIGGINS )
FAMILY PARTNERSHIP, L.P.; and )
THE JIMMY T. HIGGINS LIVING )
TRUST )
)
    Defendants. )



FILED

AUG 28 2014

LYNNE D. FOSTER
CLERK OF THE COURT
BY _____ D.C.

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Comes now Cheryl L. Bratcher, as mother and next of kin of the late Beau Manni, and

Joseph M. Manni, as father and next of kin of the late Beau Manni, deceased, by and through

counsel, and would show the following unto this Honorable Court as follows through their Third

Amended Complaint against the Defendants:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, Joseph Manni, as father and next of kin of Beau Manni, deceased, is a

citizen and resident of Poplar Grove, Illinois.

2.    Plaintiff, Cheryl L. Bratcher, as mother and next of kin of Beau Manni, deceased,

is a citizen and resident of Warren County, Tennessee.

3.      Defendant, Jimmy Higgins, is a citizen and resident of Cannon County, Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee. Defendant Jimmy Higgins has been properly served with process in this matter.

4.      Defendant, Jimmy Higgins, owns and operates the business known as Higgins Livestock, which is engaged in raising livestock and other agricultural commodities.

5.      Defendant, James Thomas "Tommy" Higgins, is a citizen and resident of Cannon County, Tennessee, with an address of 784 Short Mountain Road; Woodbury, Tennessee. Defendant Jimmy Higgins has been served with process through his counsel of record. Defendant, James Thomas "Tommy" Higgins engages in work for the benefits of the Defendant Jimmy Higgins and Higgins Livestock and The Higgins Family Partnership, L.P. and The Higgins Family Partnership, L.P.

6.      Defendant, The Higgins Family Partnership, L.P., is a Tennessee limited partnership authorized to conduct business in the State of Tennessee. Said Defendant can be served with process through its registered agent for service of process, Jimmy Higgins and can be served with process at 6839 McMinnville Highway, Woodbury, Tennessee. Plaintiffs further sue Jimmy Higgins in his role as general partner of The Higgins Family Partnership, L.P. pursuant to T.C.A. §61-2-302 and otherwise pursuant to Tennessee law.

7.      Defendant The Jimmy T. Higgins Living Trust owns 98% of the interests in The Higgins Family Partnership, L.P. Said Defendant can be served with process through Jimmy Higgins and can be served with process at 6839 McMinnville Highway, Woodbury, Tennessee.

8.      Beau Manni was an independent contractor hired by Defendant Jimmy Higgins and/or Higgins Livestock to perform certain agriculture related jobs and was the victim of an accident that occurred within the bounds and confines of Cannon County, Tennessee.

9.      Defendant Jimmy Higgins maintains a silage bin/storage area for harvested corn fodder.

10.     Defendant, The Higgins Family Partnership, L.P., owns the property in which the dangerous and defective condition existed. Further, Defendant The Jimmy T. Higgins Living Trust is the majority owner of the Defendant The Higgins Family Partnership, L.P.

## II.    FACTS OF THE CASE

11.     The silage bin consisted of three large walls in a u-shape form.

12.     Defendant James Thomas "Tommy" Higgins and the Defendant Jimmy Higgins designed and built the subject silage bin.

13.     Each wall consisted of several large and heavy concrete blocks or barriers stacked on top of each other.

14.     Each concrete block weighed approximately three thousand six hundred (3,600) pounds.

15.     Silage was placed inside the bin with farm equipment. A John Deere tractor 7220 was being operated by the Defendant James Thomas "Tommy" Higgins and a John Deere tractor 7520 was being operated at the time of the subject accident and both pushed the silage against the walls of the silage bin.

16.     The stacked, concrete blocks weighing approximately three thousand six hundred (3,600) pounds each were not secured or restrained by any device or safety apparatus. Further, the stacked, concrete blocks were set on a gravel base and not a reinforced concrete footing as would be expected in a structurally sound configuration.

17.     On September 7, 2013, Beau Manni was spraying weeds for the Defendants on their farm at 6839 McMinnville Highway, Woodbury, Tennessee.

18.      Beau Manni was at the base of the silage bin wall spraying weeds when it collapsed on him after the tractors that were being operated by the Defendants pushed silage against the walls, and the weight of the tractors combined with the force of the silage being packed against the walls caused the free standing concrete blocks to fall.

19.      The Defendants were moving their tractors at or near the walls of the silage bin at the time of the subject accident.

20.      Upon removing the concrete blocks with a tractor, Beau Manni was found deceased by way of a blunt impact to the right side of his head and had also sustained other injuries.

### III.      CAUSES OF ACTION

21.      The Plaintiffs sue the Defendants for negligence in providing an unsafe work environment to independent contractor Beau Manni.

22.      The Plaintiffs sue the Defendants for the negligent design, construction, and maintenance of the silage bin for the following reasons:

    a.      The Defendants were negligent in stacking three thousand six hundred pound (3,600) concrete blocks on top of one another without any safety measure or restraints to secure them and without regard to the safety of Beau Manni and others.

    b.      The Defendants were negligent in setting the concrete blocks on a gravel base, not a reinforced concrete footing as would be expected in a structurally sound configuration, and the gravel base for the concrete block sides was inadequate to prevent the overturn of the block wall.

c.    The Defendants were negligent in not constructing the silage bin where the stability of the walls could have been assured by earth berms around the outside and posts set around the silage bin to stabilize and secure the walls made of the concrete blocks.  Alternatively, the Defendants were negligent in not constructing a "drive over" silage bin where the walls would not have collapsed when the silage was being packed by tractors.

d.    The Defendants were negligent in attempting to construct a silage bin with no expertise or training or education in how to safely construct or design the silage bin and sought no advice from any expert on how it was to be designed or constructed or maintained.

e.    The Defendants were negligent in not securing the concrete blocks into each other to where they were not free standing, which would have assisted in the prevention of the collapse of the wall.

f.    The Defendants were negligent in not doubling the concrete blocks on the walls to where the concrete block walls were "two deep," which would have provided additional stability to the walls.

23.    The Defendants could have engaged in the feasible, precautionary measures listed in paragraph 22 yet failed to do so before the subject accident occurred.

24.    It was reasonably foreseeable to the Defendants that the stability of the walls of the silage bin was compromised because the back wall was previously bowing out at the top. The Defendants were negligent in using the silage bin with the actual knowledge or constructive knowledge of the dangerous and/or defective condition that existed on the property.

25.     The Defendants were negligent in failing to adequately warn Beau Manni of the dangers associated with the silage bin and failed to place visible warning signs at or near the silage bin warning independent contractors, such as Beau Manni, of the danger to be near the silage bin. These precautionary measures could have been implemented before the subject accident.

26.     The Defendants were negligent in failing to restrict access to the area where the silage was being packed and should have fenced off the silage bin to where if the block wall fell, the blocks would not reach anyone walking near the silage bin. These precautionary measures could have been implemented before the subject accident.

27.     The Defendants were negligent for the use of large, heavy concrete blocks in willful disregard for their intended or manufactured use.

28.     The Defendants were negligent in the operation of their tractors over the silage where the tractors not only packed the silage downward but also placed a side thrust on the wall from the silage being squeezed between the loading and the wall of the silage bin.

29.     The Defendants were negligent in failing to put in place any safety policies and procedures for their silage operation, which contributed to the accident that caused the death of Beau Manni.

30.     The Defendants were negligent in not providing any farm safety training to Beau Manni.

31.     The silage bin could have been constructed by the Defendants in such a way wherein the accident would not have occurred, and the Defendants were negligent in not constructing the silage bin in a way to have prevented the subject accident.

32. The Defendants were negligent in operating two tractors at one time in packing the silage rather than operating one tractor at a time and having the extra person around the silage bin to ensure that no one walked around the silage bin while packing occurred.

33. The Defendants The Jimmy T. Higgins Living Trust and The Higgins Family Partnership, L.P. were negligent in that they were vested with the duty of reasonable care as owners of the subject property to ensure that the property did not contain dangerous and/or defective conditions on the premises and failed to discharge this duty and breached this duty of care owed to Beau Manni.

34. Plaintiffs further allege that Defendants' actions were reckless, and they are therefore entitled to recover punitive damages against the Defendants.

35. Defendants are liable under the doctrine of respondeat superior for the actions of any employee or agent of Defendants whose negligent and reckless actions caused or contributed to the death of Beau Manni.

36. All of these causes of action are factually based and are the proximate causes of the injuries sustained by and death of Beau Manni.

## IV.   DAMAGES

37. The Plaintiffs are entitled to recover for their son's physical and mental pain and suffering prior to his death; his loss of income and loss of capacity to earn income in the future; his funeral expenses; incidental damages; including the pecuniary value of Beau Manni's life; which includes, but is not limited to, his loss of enjoyment of life; the loss of consortium with his father and mother; compensatory damages; punitive damages; and all other damages allowed by law.


PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

a. That proper process be issued and served upon the Defendant The Higgins Family Partnership, L.P., Jimmy Higgins as general partner of The Higgins Family Partnership, L.P., and Defendant The Jimmy T. Higgins Living Trust that they be required to appear and answer this Third Amended Complaint within the time required by law;

b. That Jimmy Higgins answer this Third Amended Complaint within the time required by law;

c. That Plaintiffs, as father and mother and next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for compensatory damages;

d. That Plaintiffs, as father and mother next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for punitive damages;

e. That a jury of twelve (12) persons try this cause;

f. That the costs of this action and any discretionary costs be awarded to the Plaintiffs; and

g. For such further and other general relief to which Plaintiffs may be entitled.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on the following counsel of record in the manner of service indicated below:

_____ By placing this document in a postage prepaid envelope in the United States Mail Service addressed to:

Raymond G. Prince, Esq.
Prince & Hellinger, PC
150 Second Ave, N., Suite 300
Nashville, Tennessee 37201

✓ By sending this document via facsimile to:

Raymond G. Prince, Esq.
VIA FACSIMILE AT (615) 244-8644

This the 28th day of August , 2014.

Brent Keeton by permission MTG
C. Brent Keeton, Esq. (BPR #022147)

Michael D. Galligan, Esq. 3181
M. Trevor Galligan, Esq. 27243

Respectfully submitted this the 28th day of August, 2014.

_Brent Keeton_ by permission MTG
C. Brent Keeton, Esq. (BPR #022147)
Keeton & Perry, PLLC
Attorneys and Counselors At Law
401 Murfreesboro Highway
Manchester, Tennessee 37355
(931) 723-7145 (phone)
(931) 723-7147 (fax)
brent@keetonperry.com (email)
*Attorney for Cheryl L. Bratcher*

_____
Michael D. Galligan, Esq. (BPR #003181)
M. Trevor Galligan, Esq. (BPR #027243)
Galligan & Newman
309 West Main Street
McMinnville, Tennessee 37110
*Attorney for Joseph Manni*



gett, Secretary of State

tate of Tennessee
L. Parks Avenue, 6th Floor
e, Tennessee 37243-1102

7014 1200 0000 6356 2221



GRANGE MUTUAL CASUALTY
COMPANY
671 S HIGH STREET
COLUMBUS, OH 43206

RCVD
JAN 2 6 2015
CL PROCESSING



02 1M
$ 06.870
000 4283354     JAN 22 2015
MAILED FROM ZIP CODE 37243

# IN THE CHANCERY COURT OF CANNON COUNTY, TENNESSEE
## AT WOODBURY

JIMMY HIGGINS,  )
JAMES THOMAS HIGGINS,  )
THE JIMMY T. HIGGINS LIVING  )
TRUST, and  )
THE HIGGINS FAMILY  )
PARTNERSHIP, L.P.  )
      )
    Plaintiffs,  )
      )
      )
vs.  )
      )
THE BURLINGTON INSURANCE  )
COMPANY, and  )
GRANGE MUTUAL  )
CASUALTY COMPANY  )
      )
    Defendants.  )

**FILED**

JAN 06 2014

WILLIAM M. BRYSON
CLERK & MASTER

Case No. 15-02

Declaratory Judgment Action

Judge _____

## COMPLAINT

Plaintiffs Jimmy Higgins, James Thomas ("Tommy") Higgins, The Jimmy T. Higgins Living Trust (the "Trust"), and The Higgins Family Partnership, L.P. (the "Partnership"), state as follows:

### Introduction

1.    Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are defendants in the civil action, *Joseph M. Manni, et al. v. Jimmy Higgins, et al.*, Case No. 865, now pending in the Circuit Court of Cannon County, Tennessee at Woodbury (the "Manni Action").

2.    The Manni Action asserts a wrongful death claim against Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership related to Beau Manni, who died when a wall of a three-sided silage bin collapsed and fell on him on September 7, 2013, on the Higgins Farm, while he

1

Case 3:15-cv-00128   Document 1-1   Filed 02/11/15   Page 54 of 80 PageID #: 58

was working that day as a farm employee. The plaintiffs in the Manni Action are Cheryl Bratcher and Joseph Manni, the divorced parents of Beau Manni.

3. Jimmy Higgins is the general partner of the Partnership, which owns and operates the farm in Cannon County (the "Higgins Farm").

4. Tommy Higgins is a limited partner of the Partnership.

5. The Trust is a limited partner of the Partnership, which owns and operates the Higgins Farm.

6. Grange Mutual Casualty Company ("Grange") issued a farm owner policy, numbered 2740215-03, with effective dates of March 15, 2013 through March 15, 2014 (the "Grange Policy"), that insures the Partnership, Jimmy Higgins (as the General Partner of the Partnership), and Tommy Higgins and the Trust (as limited partners of the Partnership), as relates to the Partnership's ownership and operation of the Higgins Farm during the effective dates of the Grange policy, including at the time of Beau Manni's death on September 7, 2013.[1]

7. Further, Jimmy Higgins is an owner and operator of a livestock business with the trade name of Higgins Livestock.

8. Tommy Higgins is also an employee of Higgins Livestock.

9. The Burlington Insurance Company ("Burlington") issued a commercial general liability policy, numbered 019B028954, with effective dates of June 10, 2013 through June 10, 2014 (the "Burlington Policy"), to Jimmy and Connie Higgins, d/b/a Higgins Livestock that insured Higgins Livestock, Jimmy Higgins, and Tommy Higgins for their ownership, operation

---

[1] Grange has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Grange Policy to the Complaint, but will file it under seal with the Court when necessary.

2

and/or work for Higgins Livestock during the effective dates of the Burlington policy, including at the time of Beau Manni's death on September 7, 2013.[2]

10.    This three-sided silage bin on the Higgins Farm was designed, paid for, built, owned, and maintained by Higgins Livestock and was used by Higgins Livestock to store corn, including cobs and stalks, for use as feed for livestock owned by Higgins Livestock.

11.    This three-sided silage bin had an open front that was approximately 115 feet deep and 105 feet wide, and the bin was constructed of grooved concrete blocks.

12.    The three walls of this silage bin were each approximately eight feet tall and consisted of the grooved concrete blocks that each weighed approximately 3,500 or 3,600 pounds.

13.    The silage bin had no roof.

14.    To pack down the silage within this three-sided silage bin, Higgins Livestock used tractors to drive into the silage bin and on top of and back and forth across the silage.

15.    In or about late July or August 2013, the back wall of the three-sided silage bin had to be repaired after it leaned outward from the pressure of packed silage.

16.    Prior to September 7, 2013, Beau Manni knew that one of the walls of the three-sided silage bin had bowed outward and that he should not approach the silage bin's walls because of the danger of collapse.

17.    Further, Beau Manni had, prior to September 7, 2013, performed temporary work for Higgins Livestock by assisting in the repair of the three-sided silage bin's back wall and by helping pack silage into the bin.

---

[2] Burlington has demanded that Plaintiffs keep the terms of its policy confidential due to the Manni Action. Plaintiffs therefore have not attached the Burlington Policy to the Complaint, but will file it under seal with the Court when necessary.

3

18. Jimmy Higgins gave standing instructions to persons, including Beau Manni, who worked on the Higgins Farm or worked for Higgins Livestock from time to time, not to approach the silage bin's walls because of the danger of a collapse of its wall.

19. Jimmy Higgins gave this warning to such persons regarding the silage bin in his capacity as general partner of the Partnership, which owned the Higgins Farm.

20. Jimmy Higgins gave this warning in his capacity as owner and operator of Higgins Livestock.

21. On September 7, 2013, Beau Manni was working as a farm employee of the Partnership on the Higgins Farm.

22. The work Beau Manni was to perform on and for the Higgins Farm on that date was spraying weed killer around certain of the Higgins Farm's barns and structures, other than the three-sided silage bin, used for farming.

23. On September 7, 2013, Jimmy Higgins and Tommy Higgins, acting on behalf of Higgins Livestock, were driving tractors into the silage bin and on top of the silage in order to pack it down within the silage bin.

24. As Jimmy Higgins and Tommy Higgins were driving tractors within the silage bin to pack down the silage, a large portion of the left wall of the silage bin suddenly collapsed outward.

25. At the time, Beau Manni knew or should have known that tractors were in use packing down silage in the silage bin.

26. Unknown to Jimmy Higgins and Tommy Higgins, Beau Manni, for some unknown reason and in disregard of specific instructions to the contrary, approached and was near the left outer wall of the silage bin.

4

27. At that time, a portion of the left outer wall of the silage bin suddenly collapsed and fell onto Beau Manni, causing his instantaneous death.

28. The Manni Action was brought on September 11, 2013.

## Grange

29. Grange is now providing a defense in the Manni Action, subject to a reservation of rights, to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, and the Trust as a limited partner of the Partnership.

30. Grange's reservation of rights is without merit.

31. Any denial of coverage by Grange to the Partnership, Jimmy Higgins as a general partner of the Partnership, Tommy Higgins as a limited partner of the Partnership, or the Trust as a limited partner of the Partnership would be totally without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Grange Policy.

32. Plaintiffs therefore seek a declaration that Grange is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

## Burlington

33. Burlington is now providing a defense in the Manni Action, subject to a reservation of rights, to Jimmy Higgins, d/b/a as Higgins Livestock, and Tommy Higgins in his capacity as an employee of Higgins Livestock.

34. Burlington's reservation of rights is without merit.

35. Burlington has recently demanded that Jimmy Higgins submit to an oral examination under oath concerning matters related to the death of Beau Manni, though the

5

Burlington Policy contains no provision that gives or allows Burlington the right to demand or conduct any such oral examination.

36.     Any denial of coverage by Burlington to Jimmy Higgins, d/b/a Higgins Livestock, or Tommy Higgins, as an employee of Higgins Livestock, would be without merit and in bad faith as the Manni Action falls squarely within the terms of coverage set forth in the Burlington Policy.

37.     Plaintiffs therefore seek a declaration in the present suit that Burlington is obligated to provide insurance coverage for the costs associated with their defense and any settlement or judgment in the Manni Action.

## Jurisdiction and Venue

38.     Jimmy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee.

39.     Tommy Higgins is a citizen and resident of Cannon County, Tennessee, with an address of 784 Short Mountain Road, Woodbury, Tennessee.

40.     The Trust was prepared and established in Tennessee and is intended to provide for the health, welfare, support, maintenance, and education of Jimmy T. Higgins and his family.

41.     The Partnership is a limited partnership organized under Tennessee law with its principal place of business at 6839 McMinnville Highway, Woodbury, Tennessee.

42.     Grange is an Ohio corporation with its principal place of business at 671 S. High Street, Columbus, Ohio 43206.

43.     Burlington is a North Carolina corporation with its principal place of business at 238 International Road, Burlington, North Carolina 27215.

6

44. This Court has jurisdiction to grant declaratory relief pursuant to Tenn. Code Ann. § 29-14-101, *et seq.*

45. Venue in this action is proper under Tenn. Code Ann. § 20-4-104.

### Beau Manni

46. Beau Manni graduated from high school in November 2011.

47. Thereafter, for a period of time, Mr. Manni worked full time for a Taco Bell restaurant.

48. In addition, during this period of time, he regularly performed work or jobs on a part-time basis for businesses or farms owned and/or operated by Michael Bratcher (Mr. Manni's step-father) and/or Sammy Bratcher (Mr. Manni's step-grandfather).

49. Michael Bratcher and/or Cheryl Bratcher (Manni's mother) knew Jimmy Higgins and his family and suggested, recommended, and furnished Beau Manni to Jimmy Higgins, Tommy Higgins, and their family for the purpose of at times performing certain job-specific, temporary, part-time work for certain of the Higgins family businesses to meet seasonal or short-term workload conditions.

50. In or about July 2013, Beau Manni, who was 19 years old, first began at times performing such certain job-specific, temporary, part-time work to meet seasonal or short-term workload conditions for certain of the Higgins businesses.

51. His job-specific work included at times part-time work as a farm employee for the Partnership on the Higgins Farm. The job-specific work performed by Mr. Manni as a farm employee for the Partnership prior to his death included at certain times painting fences on the Higgins Farm and mowing and weed eating around the fences and fields on the Higgins Farm.

7

52.     The temporary, job-specific work performed by Beau Manni at times for Higgins Livestock included assisting in the repair of the three sided-silage bin's back wall and in packing silage into the bin.

53.     While performing this various temporary, job-specific work, Mr. Manni continued working full time for the Taco Bell restaurant and working part-time for Michael Bratcher and/or Sammy Bratcher.

54.     On September 7, 2013, Beau Manni was working on the Higgins Farm as a farm employee for the Partnership with duties principally in connection with the maintenance or use of the Higgins Farm as a farm. Specifically on that day, Mr. Manni was employed to spray weed killer around certain of the Higgins Farm's barns or other buildings, other than the three-sided silage bin, used for farming.

### Claims in the Manni Action

55.     A copy of the Third Amended Complaint in the Manni Action is attached as Exhibit A.

56.     The Manni Action alleges that Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership are at fault for Beau Manni's death in that they allegedly were negligent in:

      a.     providing an unsafe work environment;

      b.     the design, construction, and maintenance of the silage bin;

      c.     failing to provide feasible precautionary measures;

      d.     that they had actual or constructive knowledge of the dangerous and/or defective condition that existed on the Higgins Farm;

      e.     failing to adequately warn Beau Manni and place visible warning signs at or near the silage bin;

8

f.     failing to restrict access to the area where the silage was being pack;

g.     using large, heavy concrete blocks in allegedly willful disregard for their intended or manufactured use;

h.     operating tractors to pack silage;

i.     failing to put in place any safety policies and procedures for their silage operation; and

j.     not providing any farm safety training to Beau Manni.

57.     The Manni Action further alleges that the Partnership, as owner of the Higgins Farm, was negligent in failing to discharge a duty of reasonable care to ensure that the three-sided silage bin on its property did not constitute a dangerous and/or defective condition.

58.     After the Manni Action was filed, timely notice of the suit was provided to Grange.

59.     After the Manni Action was filed, timely notice of the suit was provided to Burlington.

## Claims Against Grange

60.     The named insured on the Grange Policy is the Partnership.

61.     The Grange Policy further defines insureds to include "members and partners" of the Partnership, including Jimmy Higgins, Tommy Higgins, and the Trust, "with respect to the conduct of [the Partnership's] 'farming' operations."

62.     The Grange Policy provides coverage for claims based on a bodily injury to a farm employee, like Beau Manni, stating specifically that:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies. The "bodily injury" must:

(1)     Be caused by an "occurrence";

9

(2)     Be sustained by a "farm employee";

(3)     Arise out of and in the course of the injured employee's employment by
        the insured; this employment must involve ownership, maintenance or use
        of portions of the "insured location" that are owned or operated for
        "farming" purposes. As used here, the terms ownership, maintenance and
        use include operations necessary or incidental to ownership, maintenance
        and use.

63.     The Grange Policy defines "farm employees," to be individuals, like Beau Manni,
who are an "employee whose duties are principally in connection with the maintenance or use of
the 'insured location' as a farm" and that "[t]hese duties include the maintenance or use of the
'insured's' farm equipment."

64.     After receiving notice that the Manni Action had been amended on August 28,
2014, to add as defendants the Partnership, as owner of the Higgins Farm, and Jimmy Higgins in
his capacity as General Partner of the Partnership, and Tommy Higgins and the Trust, as limited
partners of the Partnership, Grange agreed to provide them each a coverage defense subject to a
reservation of rights set forth in an October 7, 2014 letter.

65.     Grange's October 7th letter sets forth a variety of purported grounds under which
coverage under the Grange Policy for the Manni Lawsuit might be excluded, including the
allegation that Beau Manni "may" have been acting as a non-farm "employee" of the Partnership
on September 7, 2013, and as such that claims related to his death would fall within the Grange
Policy's exclusion for injuries to certain Partnership employees.

66.     None of the purported grounds for exclusion identified by Grange has any merit
whatsoever, including, but not limited to, its claim that Beau Manni "may" have been acting as a
non-farm employee of the Partnership on the date of his death. At all times material, Mr. Manni
was acting as a farm employee of the Partnership on the Higgins Farm and therefore any claims

related to his death against the Partnership as the owner of Higgins Farm, Jimmy Higgins as the General Partner of the Partnership, and Tommy Higgins and/or the Trust as limited partners of the Partnership, fall squarely within the scope of coverage extended under the Grange Policy for claims arising from bodily injury to Partnership farm employees.

## Claims Against Burlington

67.    Jimmy Higgins, d/b/a Higgins Livestock, is an insured under the Burlington Policy.

68.    The Burlington Policy defines insureds to include "employees" of Higgins Livestock, such as Tommy Higgins, "for acts within the scope of their employment by [Higgins Livestock] or while such employees are performing duties related to the conduct of [Higgins Livestock's] business."

69.    On September 7, 2013, at the time of Beau Manni's death, Tommy Higgins was acting within the scope and course of his employment with Higgins Livestock.

70.    The Burlington Policy provides coverage for claims based on a bodily injury, stating "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

71.    After receiving timely notice of the Manni Action, Burlington agreed to provide a defense subject to a reservation of rights set forth in a December 20, 2013 letter and an August 15, 2014 letter.

72.    Burlington's December 20th and August 15th letters set forth a variety of grounds for the exclusion of coverage under the Burlington Policy for the Manni Action.

73.    The principal purported ground for exclusion is Burlington's supposition that Beau Manni "may have been" an employee of Higgins Livestock, rather than a farm employee of

11

the Partnership, on September 7, 2013, and therefore claims related to his death could potentially fall within the Burlington Policy's exclusion for coverage for bodily injuries to non-temporary Higgins Livestock employees.

74. Contrary to Burlington's supposition, it is clear and beyond dispute that at the time of Beau Manni's death on September 7, 2013, Manni was acting as a farm employee of the Partnership at the Higgins Farm.

75. As a result, none of the purported grounds for Burlington's potential exclusion of coverage to Jimmy Higgins, d/b/a Higgins Livestock, or to Tommy Higgins, as an employee of Higgins Livestock, as set out in either its December 20th or August 15th letters has any basis whatsoever in law or in fact.

76. Yet, Burlington continues to investigate these purported grounds for exclusion and in an October 7, 2014 letter, Burlington demands that Jimmy Higgins submit to an oral examination under oath, even though the Burlington Policy does not give Burlington any right to demand any such an oral examination.

### Count One: Declaration Against Grange

77. Jimmy Higgins, Tommy Higgins, the Trust, and the Partnership incorporate by reference the above paragraphs.

78. Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Grange Policy.

79. The Manni Action alleges that the Partnership, as owner of the Higgins Farm, and Jimmy Higgins, as general partner of the Partnership, and Tommy Higgins and the Trust, as limited partners of the Partnership, are at fault for the death of the Beau Manni.

12

80.     On September 7, 2013, Beau Manni was serving as a farm employee, as defined under the Grange Policy, of the Partnership, in spraying for weeds on the Higgins Farm in connection with the maintenance and use of the Higgins Farm as a farm.

81.     Beau Manni's death on September 7, 2013, was caused by an "occurrence," as defined under the Grange Policy, and arose out of and in the course of his employment as a farm employee by the Partnership.

82.     The Partnership, Jimmy Higgins, Tommy Higgins and the Trust are insureds under the Grange Policy and are entitled to both a full defense and coverage under the Grange Policy for claims made against them in the Manni Action relating to the ownership and/or operation of the Higgins Farm.

83.     The Partnership, Jimmy Higgins, Tommy Higgins and the Trust seek a declaration that Grange is obligated under the Grange Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

### Count Two: Declaration Against Burlington

84.     Jimmy Higgins and Tommy Higgins incorporate by reference the above paragraphs.

85.     Under Tenn. Code Ann. § 29-14-101, *et seq.* and Tennessee Rule of Civil Procedure 57, this Court has the power to declare the rights of the parties with respect to the Burlington Policy.

86.     The Manni Action alleges that Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins, as an employee of Higgins Livestock, are at fault for the death of Beau Manni.

13

87. Jimmy Higgins, d/b/a Higgins Livestock, was acting on behalf of Higgins Livestock in packing silage in the three-sided silage bin on September 7, 2013.

88. Tommy Higgins was acting as an employee of Higgins Livestock in packing silage and acting within the scope of that employment and/or performing duties related to the conduct of Higgins Livestock's business.

89. The silage bin that collapsed onto Beau Manni was designed, paid for, built, owned and maintained by Jimmy Higgins, d/b/a Higgins Livestock.

90. Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins are insureds under the Burlington Policy and are entitled to both a full defense and coverage under the Burlington Policy for claims made against them in the Manni Action relating to their ownership, operation, and/or work for Higgins Livestock.

91. Jimmy Higgins, d/b/a Higgins Livestock, and Tommy Higgins seek a declaration that Burlington is obligated under the Burlington Policy to provide insurance coverage for the costs associated with their defense and any judgment entered against them in the Manni Lawsuit.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

(1) Declare that Burlington and Grange are obligated to provide coverage under their respective policies for the costs arising from the Manni Action.

(2) Award Plaintiffs all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees.

(3) Grant Plaintiffs such other and further relief as the Court deems just and equitable.

14

Respectfully submitted,

Gayle I. Malone (#2388)
Jason W. Callen (#26225)
WALKER, TIPPS & MALONE, PLC
2300 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
615-313-6000

*Counsel for Plaintiff*

107254

## IN THE CIRCUIT COURT OF CANNON COUNTY, TENNESSEE
## AT WOODBURY



JOSEPH M. MANNI, AS FATHER )
AND NEXT OF KIN AND )
CHERYL L. BRATCHER AS )
MOTHER AND NEXT OF KIN OF )
BEAU MANNI, DECEASED, )

      Plaintiff, )

vs. )

                                NO. 865
JIMMY HIGGINS d/b/a )         JURY DEMAND
HIGGINS LIVESTOCK; )
JAMES THOMAS "TOMMY" )
HIGGINS; )
THE HIGGINS FAMILY )
PARTNERSHIP, L.P.; )
JIMMY HIGGINS in the capacity of )
General Partner of THE HIGGINS )
FAMILY PARTNERSHIP, L.P.; and )
THE JIMMY T. HIGGINS LIVING )
TRUST )

      Defendants. )

### PLAINTIFFS' THIRD AMENDED COMPLAINT

Comes now Cheryl L. Bratcher, as mother and next of kin of the late Beau Manni, and

Joseph M. Manni, as father and next of kin of the late Beau Manni, deceased, by and through

counsel, and would show the following unto this Honorable Court as follows through their Third

Amended Complaint against the Defendants:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, Joseph Manni, as father and next of kin of Beau Manni, deceased, is a

citizen and resident of Poplar Grove, Illinois.

2.    Plaintiff, Cheryl L. Bratcher, as mother and next of kin of Beau Manni, deceased,

is a citizen and resident of Warren County, Tennessee.

3.      Defendant, Jimmy Higgins, is a citizen and resident of Cannon County, Tennessee, with an address of 6839 McMinnville Highway, Woodbury, Tennessee. Defendant Jimmy Higgins has been properly served with process in this matter.

4.      Defendant, Jimmy Higgins, owns and operates the business known as Higgins Livestock, which is engaged in raising livestock and other agricultural commodities.

5.      Defendant, James Thomas "Tommy" Higgins, is a citizen and resident of Cannon County, Tennessee, with an address of 784 Short Mountain Road, Woodbury, Tennessee. Defendant Jimmy Higgins has been served with process through his counsel of record. Defendant, James Thomas "Tommy" Higgins engages in work for the benefits of the Defendant Jimmy Higgins and Higgins Livestock and The Higgins Family Partnership, L.P. and The Higgins Family Partnership, L.P.

6.      Defendant, The Higgins Family Partnership, L.P., is a Tennessee limited partnership authorized to conduct business in the State of Tennessee. Said Defendant can be served with process through its registered agent for service of process, Jimmy Higgins and can be served with process at 6839 McMinnville Highway, Woodbury, Tennessee. Plaintiffs further sue Jimmy Higgins in his role as general partner of The Higgins Family Partnership, L.P. pursuant to T.C.A. §61-2-302 and otherwise pursuant to Tennessee law.

7.      Defendant The Jimmy T. Higgins Living Trust owns 98% of the interests in The Higgins Family Partnership, L.P. Said Defendant can be served with process through Jimmy Higgins and can be served with process at 6839 McMinnville Highway, Woodbury, Tennessee.

8.      Beau Manni was an independent contractor hired by Defendant Jimmy Higgins and/or Higgins Livestock to perform certain agriculture related jobs and was the victim of an accident that occurred within the bounds and confines of Cannon County, Tennessee.

9. Defendant Jimmy Higgins maintains a silage bin/storage area for harvested corn fodder.

10. Defendant, The Higgins Family Partnership, L.P., owns the property in which the dangerous and defective condition existed. Further, Defendant The Jimmy T. Higgins Living Trust is the majority owner of the Defendant The Higgins Family Partnership, L.P.

## II. FACTS OF THE CASE

11. The silage bin consisted of three large walls in a u-shape form.

12. Defendant James Thomas "Tommy" Higgins and the Defendant Jimmy Higgins designed and built the subject silage bin.

13. Each wall consisted of several large and heavy concrete blocks or barriers stacked on top of each other.

14. Each concrete block weighed approximately three thousand six hundred (3,600) pounds.

15. Silage was placed inside the bin with farm equipment. A John Deere tractor 7220 was being operated by the Defendant James Thomas "Tommy" Higgins and a John Deere tractor 7520 was being operated at the time of the subject accident and both pushed the silage against the walls of the silage bin.

16. The stacked, concrete blocks weighing approximately three thousand six hundred (3,600) pounds each were not secured or restrained by any device or safety apparatus. Further, the stacked, concrete blocks were set on a gravel base and not a reinforced concrete footing as would be expected in a structurally sound configuration.

17. On September 7, 2013, Beau Manni was spraying weeds for the Defendants on their farm at 6839 McMinnville Highway, Woodbury, Tennessee.

18.     Beau Manni was at the base of the silage bin wall spraying weeds when it collapsed on him after the tractors that were being operated by the Defendants pushed silage against the walls, and the weight of the tractors combined with the force of the silage being packed against the walls caused the free standing concrete blocks to fall.

19.     The Defendants were moving their tractors at or near the walls of the silage bin at the time of the subject accident.

20.     Upon removing the concrete blocks with a tractor, Beau Manni was found deceased by way of a blunt impact to the right side of his head and had also sustained other injuries.

### III.    CAUSES OF ACTION

21.     The Plaintiffs sue the Defendants for negligence in providing an unsafe work environment to independent contractor Beau Manni.

22.     The Plaintiffs sue the Defendants for the negligent design, construction, and maintenance of the silage bin for the following reasons:

   a.     The Defendants were negligent in stacking three thousand six hundred pound (3,600) concrete blocks on top of one another without any safety measure or restraints to secure them and without regard to the safety of Beau Manni and others.

   b.     The Defendants were negligent in setting the concrete blocks on a gravel base, not a reinforced concrete footing as would be expected in a structurally sound configuration, and the gravel base for the concrete block sides was inadequate to prevent the overturn of the block wall.

    c.    The Defendants were negligent in not constructing the silage bin where the stability of the walls could have been assured by earth berms around the outside and posts set around the silage bin to stabilize and secure the walls made of the concrete blocks. Alternatively, the Defendants were negligent in not constructing a "drive over" silage bin where the walls would not have collapsed when the silage was being packed by tractors.

    d.    The Defendants were negligent in attempting to construct a silage bin with no expertise or training or education in how to safely construct or design the silage bin and sought no advice from any expert on how it was to be designed or constructed or maintained.

    e.    The Defendants were negligent in not securing the concrete blocks into each other to where they were not free standing, which would have assisted in the prevention of the collapse of the wall.

    f.    The Defendants were negligent in not doubling the concrete blocks on the walls to where the concrete block walls were "two deep," which would have provided additional stability to the walls.

23.    The Defendants could have engaged in the feasible, precautionary measures listed in paragraph 22 yet failed to do so before the subject accident occurred.

24.    It was reasonably foreseeable to the Defendants that the stability of the walls of the silage bin was compromised because the back wall was previously bowing out at the top. The Defendants were negligent in using the silage bin with the actual knowledge or constructive knowledge of the dangerous and/or defective condition that existed on the property.

25.    The Defendants were negligent in failing to adequately warn Beau Manni of the dangers associated with the silage bin and failed to place visible warning signs at or near the silage bin warning independent contractors, such as Beau Manni, of the danger to be near the silage bin. These precautionary measures could have been implemented before the subject accident.

26.    The Defendants were negligent in failing to restrict access to the area where the silage was being packed and should have fenced off the silage bin to where if the block wall fell, the blocks would not reach anyone walking near the silage bin. These precautionary measures could have been implemented before the subject accident.

27.    The Defendants were negligent for the use of large, heavy concrete blocks in willful disregard for their intended or manufactured use.

28.    The Defendants were negligent in the operation of their tractors over the silage where the tractors not only packed the silage downward but also placed a side thrust on the wall from the silage being squeezed between the loading and the wall of the silage bin.

29.    The Defendants were negligent in failing to put in place any safety policies and procedures for their silage operation, which contributed to the accident that caused the death of Beau Manni.

30.    The Defendants were negligent in not providing any farm safety training to Beau Manni.

31.    The silage bin could have been constructed by the Defendants in such a way wherein the accident would not have occurred, and the Defendants were negligent in not constructing the silage bin in a way to have prevented the subject accident.

32.     The Defendants were negligent in operating two tractors at one time in packing the silage rather than operating one tractor at a time and having the extra person around the silage bin to ensure that no one walked around the silage bin while packing occurred.

33.     The Defendants The Jimmy T. Higgins Living Trust and The Higgins Family Partnership, L.P. were negligent in that they were vested with the duty of reasonable care as owners of the subject property to ensure that the property did not contain dangerous and/or defective conditions on the premises and failed to discharge this duty and breached this duty of care owed to Beau Manni.

34.     Plaintiffs further allege that Defendants' actions were reckless, and they are therefore entitled to recover punitive damages against the Defendants.

35.     Defendants are liable under the doctrine of respondeat superior for the actions of any employee or agent of Defendants whose negligent and reckless actions caused or contributed to the death of Beau Manni.

36.     All of these causes of action are factually based and are the proximate causes of the injuries sustained by and death of Beau Manni.

## IV.   DAMAGES

37.     The Plaintiffs are entitled to recover for their son's physical and mental pain and suffering prior to his death; his loss of income and loss of capacity to earn income in the future; his funeral expenses; incidental damages; including the pecuniary value of Beau Manni's life; which includes, but is not limited to, his loss of enjoyment of life; the loss of consortium with his father and mother; compensatory damages; punitive damages; and all other damages allowed by law.


PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

a. That proper process be issued and served upon the Defendant The Higgins Family Partnership, L.P., Jimmy Higgins as general partner of The Higgins Family Partnership, L.P., and Defendant The Jimmy T. Higgins Living Trust that they be required to appear and answer this Third Amended Complaint within the time required by law;

b. That Jimmy Higgins answer this Third Amended Complaint within the time required by law;

c. That Plaintiffs, as father and mother and next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for compensatory damages;

d. That Plaintiffs, as father and mother next of kin of Beau Manni, deceased, be awarded a judgment against Defendants of not more than ten million dollars for punitive damages;

e. That a jury of twelve (12) persons try this cause;

f. That the costs of this action and any discretionary costs be awarded to the Plaintiffs; and

g. For such further and other general relief to which Plaintiffs may be entitled.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on the following counsel of record in the manner of service indicated below:

_____ By placing this document in a postage prepaid envelope in the United States Mail Service addressed to:

Raymond G. Prince, Esq.
Prince & Hellinger, PC
150 Second Ave. N., Suite 300
Nashville, Tennessee 37201

✓ By sending this document via facsimile to:

Raymond G. Prince, Esq.
VIA FACSIMILE AT (615) 244-8644

This the 28th day of August , 2014.

Brent Keeton, by permission MTG
C. Brent Keeton, Esq. (BPR #022147)

Michael D. Galligan, Esq. 3181
M. Trevor Galligan, Esq. 27243

Respectfully submitted this the 28th day of August, 2014.

_Brent Keeton_ by permission MTG
C. Brent Keeton, Esq. (BPR #022147)
Keeton, & Perry, PLLC
Attorneys and Counselors At Law
401 Murfreesboro Highway
Manchester, Tennessee 37355
(931) 723-7145 (phone)
(931) 723-7147 (fax)
brent@keetonperry.com (email)
*Attorney for Cheryl L. Bratcher*

Michael D. Galligan, Esq. (BPR #003181)
M. Trevor Galligan, Esq. (BPR #027243)
Galligan & Newman
309 West Main Street
McMinnville, Tennessee 37110
*Attorney for Joseph Manni*

Clerk
IFG Companies / Claim Dept.

**STATE OF TENNESSEE**
**CANNON COUNTY**
**16TH JUDICIAL DISTRICT**

JAN 27 2015

Doc. Descr. 201156
Assigned Adj. _____

- [ ] First
- [ ] Alias
- [ ] Pluries

JIMMY HIGGINS, JAMES THOMAS HIGGINS,

THE JIMMY T. HIGGINS LIVING TRUST, and

THE HIGGINS FAMILY PARTNERSHIP, L.P.

               Plaintiff

Vs.

THE BURLINGTON INSURANCE COMPANY

238 International Road

Burlington, North Carolina 27215

               Defendant

CIVIL ACTION
DOCKET NO. 15-02

**Method of Service:**

- [ ] Cannon Co. Sheriff
- [ ] Out of County Sheriff
- [x] Secretary of State
- [ ] Certified Mail
- [ ] Personal Service
- [ ] Commissioner of Insurance

To the above-named Defendant:

You are summoned to appear and defend a civil action filed against you in the Chancery Court, 1 Public Square, Woodbury, TN 37190, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 1-6-15

**BILL BRYSON**
Clerk and Master
Cannon County, Tennessee

By: _Dana Davenport_
             Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Gayle I. Malone and Jason W. Callen, WALKER, TIPPS & MALONE PLC |
| | 2300 One Nashville Place, 150 Fourth Avenue, North |
| | Nashville, Tennessee 37219 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

**BILL BRYSON**
Clerk and Master

Received this summons for service this _____ day of _____, 2015.

                              SHERIFF

To request an ADA accommodation, please contact Diane Hickman at (615) 563-2320.

7014 1200 0000 6356 2214

USPS POSTAGE
$08.95
0000 4288394 JAN 22 2015
02 1M
MAILED FROM ZIP CODE 37243

...iness Services Division
...rgett, Secretary of State

State of Tennessee
...a L. ...arks Avenue, 6th Floor
...ville, ...nnessee 37243-1102



THE BURLINGTON INSURANCE
COMPANY
238 INTERNATIONAL ROAD
BURLINGTON, NC 27215